UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZACHARY HOUSTON SHOMER, | : | Case No. 2:24-cv-1283 |
| Plaintiff, | : | |
| vs. | : | District Judge Algenon L. Marbley |
| | : | Magistrate Judge Kimberly A. Jolson |
| AMBER MARIE RHEINSHELD, et al., | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff's Response to the Court's Show Cause Order is before the Undersigned. (Docs. 48, 49, 50). Because Plaintiff presented falsified evidence to the Court, the Undersigned **RECOMMENDS** that this action be dismissed as a sanction under Rule 11 of the Federal Rules of Civil Procedure. Consequently, the Undersigned also **RECOMMENDS** that Plaintiff's and Defendant's other pending motions be **DENIED as moot**. (Docs. 29, 38, 40).

**I. BACKGROUND**

Plaintiff, a prisoner incarcerated at the Southern Ohio Correctional Facility ("SOCF"), brings this action under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment's cruel and unusual punishment clause. (Doc. 1). Plaintiff's Complaint presents a fantastical series of events. On June 17, 2023, Plaintiff says he spoke to a prison inspector about correctional officers "bringing in . . . contraband." (Doc. 1-4 at 1). After that conversation, Plaintiff discovered that his "child's mother [Ms.] Rheinscheld, was using another name, had gained employment [at the prison], and was currently in [Plaintiff's] dorm." (*Id.* (saying former Defendant Rheinscheld worked for "Aramark," a contractor at the prison)). Between 4:00 PM to 7:30 PM on June 17, Plaintiff says that Ms. Rheinscheld threatened him and "flash[ed] . . . a street knife" at him. (*Id.*).

Then, according to Plaintiff, several prisoners sexually assaulted him. (*Id.* at 1–2).

After the alleged assault, Ms. Rheinscheld said "no one would believe" Plaintiff because her "friends at 'G.T.L.'" would destroy any camera footage of her actions. (*Id.* at 2). According to Plaintiff, she also "conceal[ed] her appearance" in a prison bathroom and later used "SWAT tunnels" to hide from prison cameras. (*Id.*). Then, a correctional officer named Lieutenant Williams allegedly denied Plaintiff medical treatment and placed him in segregation. (Doc. 1-2).

On March 15, 2024, Plaintiff filed this action against Ms. Rheinscheld and Defendant Williams based upon these allegations. (Doc. 1). As the case progressed, problems with Plaintiff's claim against Ms. Rheinscheld mounted. Eventually, the Court learned that Ms. Rheinscheld was not employed by the Ohio Department of Rehabilitation and Corrections ("ODRC") and never worked as a contractor at Ross Correctional Institution. (Doc. 21 at 1; Doc. 21-1 at 1–2 (affidavit from human resources staff)). And, because of ODRC's background checks and fingerprinting processes for all employees and contractors, she could not have used a false name to gain employment, as Plaintiff alleged. (*See* Doc. 21 at 1–2; Doc. 21-2 (discussing background checks and fingerprinting processes at ODRC); *cf.* Doc. 1-4 at 1 (alleging she could use "another's legit ID that looks close enough" to get hired by ODRC)). Given this new information and Plaintiff's fanciful allegations against her, the Court dismissed Ms. Rheinscheld from the case. (Doc. 22 at 3–4; Doc. 23 (adopting Doc. 22)). Plaintiff's Eighth Amendment claim against Defendant Williams for allegedly denying him medical care proceeded. (*See* Docs. 22, 23).

On February 12, 2025, Defendant Williams moved for summary judgment. (Doc. 40). Plaintiff filed two responses to that motion, as well as a sur-reply. (Docs. 41, 42, 44). Attached to those filings were two declarations from Darrius Pattson and one declaration from Dajohn M.

2

Barnes. (Docs. 41-2 at 1–2, 3–5; Doc. 44 at 7–9). Mr. Pattson and Mr. Barnes, who are currently prisoners at SOCF, were incarcerated with Plaintiff at Ross Correctional Institution on June 17, 2023. (Docs. 41-2 at 1–2, 3–5). On that day, both men declare that they witnessed Defendant Williams escorting an injured Plaintiff after the alleged assault. (*Id.*).

On April 28, 2025, the Undersigned requested that Defendant's counsel, who serves in the Ohio Attorney General Office's Criminal Justice Section, investigate the veracity of the declarations. (Doc. 45). The Undersigned did so because some aspects of the declarations appeared "suspect." (*Id.* at 2).

On May 15, Defendant's counsel filed a summary of his investigation and represented that the declarations are forged. (Doc. 46). Consequently, on May 19, 2025, the Court ordered Plaintiff to show cause why his case should not be dismissed as a sanction under Federal Rule of Civil Procedure 11. (Doc. 47). A month later, Plaintiff responded. (Docs. 48, 49, 50). The matter is ripe for review.

## II. DISCUSSION

Based upon the evidence presented by the parties, the Undersigned concludes that Mr. Pattson's and Mr. Barnes's declarations are falsified. To begin, the declarations appear to be in Plaintiff's handwriting—a fact that Plaintiff does not address or explain in any of his filings. (*See generally* Docs. 48, 49, 50; *compare* Doc. 44 at 6 (statement written and signed by Plaintiff) *with* Doc. 44 at 7 (containing similar handwriting at paragraphs one through three); *compare* Doc. 41-2 at 1 (uniquely dotted "i" in "Affidavit of Dajohn M. Barnes") *and* Doc. 44 at 9 (similarly dotted "i" in Mr. Pattson's alleged signature) *with* Doc. 44 at 1–2 (containing the same dotted "i" in Plaintiff's handwritten arguments)).

The declarations also contain other indices of forgery. For instance, Mr. Pattson's

3

signatures differ significantly between his two declarations. (*Compare* Doc. 44 at 9 *with* Doc. 41-2 at 4). And all three declarations contain the same "Sworn & True" moniker that Plaintiff includes on his other filings. (*Compare* Doc. 44 at 9 *and* Doc. 41-2 at 2, 4 *with* Doc. 44 at 5 (signature from Plaintiff, where he also wrote "Sworn & True") *and* Doc. 48 at 12 (same)).

Further, the declarations purport to be witnessed by SOCF corrections officers. (Doc. 41-2 at 2, 5; Doc. 44 at 9 (signed by officers in "K-2 South")). More specifically, Mr. Pattson's declarations are signed by an officer named "K. Powell" or "Powell," (Doc. 41-2 at 5; Doc. 44 at 9), and Mr. Barnes's declaration is signed by an officer named "Aaron." (Doc. 41-2 at 2). Defendant's counsel avers that the only officers with these names at SOCF are Kaleb Powell and Sam Aaron. (Doc. 46 at 2). Both officers swear in unrebutted affidavits that they did not sign or witness the declarations. (Doc. 46 at 2; Doc. 46-2; Doc. 46-3). In fact, they say the only documents they sign for prisoners are cash clips. (Doc. 46-2; Doc. 46-3 (suggesting prisoners could forge their signatures based upon these slips)). And, according to officer Sam Aaron, Plaintiff asked him "for the name[s] of all the officers working in the K-2 South area of the institution" in February 2025—the same month Mr. Pattson and Mr. Barnes allegedly signed their initial declarations. (Doc. 46-2; Doc. 41-2 at 2, 5).

In addition, Mr. Pattson's and Mr. Barnes's factual accounts are seemingly impossible. As the Court explained in its Show Cause Order, on June 17, 2023, Plaintiff was housed "in J-Dorm or HJ/B and moved to [the] H9/SEG unit later that day." (Doc. 46-1 at 1, 6–7). Mr. Pattson was housed in Dorm H5/A, and Mr. Barnes was housed in Dorm H2/B. (*Id.* at 1, 14, 21). While Plaintiff could have walked past Mr. Pattson's dorm in H5/A during the escort with Defendant Williams, Mr. Pattson could have seen Plaintiff only through a window. (Doc. 46-1 at 1, ¶¶ 7, 9 (also noting that prisoners in H5/A would not have been at recreation on the evening of June 17);

4

*see also* Doc. 41-2 at 3–4; Doc. 44 at 7–9 (mentioning no window)).  Mr. Barnes could not have seen Plaintiff's escort from his dorm in H2/B or from the recreation area.  (Doc. 46-1 at 1, ¶ 6, 9). Simply put, neither Mr. Pattson nor Mr. Barnes could have been within feet of Plaintiff during the escort as the declarations represent.  (*Id.* at 1, ¶ 8; *see also* Doc. 41-2 at 1, 3–4).

For his part, Plaintiff provides no evidence supporting the declarations' veracity.  (Docs. 48, 49, 50).  Mostly, he repeats his fantastical allegations against Ms. Rheinscheld; suggests he worked as a covert agent for the Drug Enforcement Administration; and waxes poetic on life, truth, and the criminal legal system.  (Doc. 48 at 2–12; *see also* Doc. 49 (asking the Court to issue a subpoena to find evidence of his DEA dealings and allegations against Ms. Rheinscheld)).

Beyond these musings, Plaintiff offers only a few, inconsistent statements about the declarations.  For example, Plaintiff suggests he could not "verify that [Mr. Pattson and Mr. Barnes] wrote the affidavits," even though Plaintiff signed the declarations and elsewhere asserts that they wanted to write them.  (Doc. 48 at 3; *see also* Doc. 41-2 at 2, 5; Doc. 44 at 9; Doc. 50-1).  Plaintiff further says, without evidentiary support, that corrections officers witnessed the declarations "on camera," even though Sam Aaron and Kaleb Powell aver in sworn affidavits that they did not.  (Doc. 48 at 4; Doc. 46-2; Doc. 46-3).  Given the evidence before the Court, the Undersigned can only conclude that Plaintiff falsified the declarations.

Under Federal Rule of Civil Procedure 11, the Court can impose sanctions "if a reasonable inquiry discloses [a] pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988) (quotation omitted); *see also* Fed. R. Civ. P. 11(b)(1)–(3) (stating that when parties present papers to the court, they certify to the best of their

5

knowledge that the "factual contentions have evidentiary support" and are not presented for "any improper purpose"). "The test for whether sanctions under Rule 11 are appropriate is whether the litigant's conduct was objectively reasonable under the circumstances." *Mohammed v. Complete Pers. Logistics*, No. 1:15-cv-414, 2016 WL 3766401, at *3 (S.D. Ohio July 8, 2016), *report and recommendation adopted*, No. 1:15-cv-414, 2016 WL 4264338 (S.D. Ohio Aug. 12, 2016). If warranted, the Court has broad discretion to fashion a sanction "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Without a doubt, presenting falsified evidence "is by no means reasonable under any circumstances." *Amadasu v. Gen. Revenue Corp.*, No. 1:04-cv-772, 2007 WL 9728561, at *3 (S.D. Ohio Sept. 21, 2007), *report and recommendation adopted*, No. 1:04-cv-772, 2008 WL 207936 (S.D. Ohio Jan. 24, 2008). Plaintiff's *pro se* status does not excuse such conduct. Rule 11 "speaks of attorneys and parties in a single breath and applies to them" the same standard. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991). In other words, even *pro se* parties like Plaintiff must comply with Rule 11's obligations and cannot submit baseless or falsified filings.

By presenting forged evidence, Plaintiff attempted to defraud the Court. And while his true motive in pursuing this case is unknown, his conduct shows blatant disregard for the Court and the judicial process. What's more, this is not the first time in this action that Plaintiff submitted frivolous filings. As noted, the Court dismissed Ms. Rheinscheld from the case after it became clear that his claims against her were totally implausible. (Docs. 22, 23). Now, for the second time, the Court must expend its limited resources addressing Plaintiff's baseless allegations.

In these circumstances, the Undersigned finds dismissal of this action is the only

appropriate sanction. Given Plaintiff's extreme conduct, anything less would serve as "an open invitation" to Plaintiff and others "to abuse the judicial process." *Amadasu*, 2007 WL 9728561, at *5 (quoting *Brady v. United States*, 877 F.Supp. 444, 453 (C.D. Ill. 1994)); *see also Harris v. Wesley*, No. 1:22-cv-122, 2024 WL 1018549, at *4 (W.D. Ky. Mar. 8, 2024) (saying a plaintiff's alteration of a medical record warranted dismissal under Rule 11); *Schaeffer v. Beckstrom*, No. 11-102, 2012 WL 3150019, at *2 (E.D. Ky. Aug. 2, 2012) (saying only dismissal was a sufficient sanction where a plaintiff presented a false medical record to support claims of sexual assault). Plus, a monetary penalty would be impractical, given Plaintiff's incarceration, his *in forma pauperis* status, and his lack of monetary resources. (Doc. 2 at 1–4 (representing Plaintiff has no funds or assets); Doc. 2-3 (prisoner account statement saying Plaintiff had $38.51 as of February 12, 2024)); *see Amadasu*, 2007 WL 9728561, at *4 (finding a monetary sanction inappropriate for a *pro se* plaintiff); *Mohammed*, 2016 WL 3766401, at *4 (same). And considering that Plaintiff has presented other frivolous filings about Ms. Rheinscheld, even after her termination from the case, nothing short of dismissal will prevent him from repeating such conduct in the future. *See, e.g.*, *Amadasu*, 2007 WL 9728561, at *5 (finding only dismissal was appropriate where the plaintiff forged documents or made intentional misrepresentations in previous cases).

In sum, because Plaintiff presented multiple forged declarations to the Court, the Undersigned **RECOMMENDS** that this action be **DISMISSED** as a sanction under Rule 11. In light of this recommendation, the Undersigned also **RECOMMENDS** that Plaintiff's and Defendant's other pending motions be **DENIED as moot**. (Doc. 29, 38, 40).

### III. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that this action be dismissed as a Rule 11 sanction. In light of this recommendation, the Undersigned further **RECOMMENDS**

7

that Plaintiff's and Defendant's other pending motions be **DENIED as moot**. (Doc. 29, 38, 40).

The Undersigned also **RECOMMENDS** that the Court certify under 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and deny Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).


Date: June 23, 2025                                    /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE


### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).